IN THE UNITED STATES DISTRICT COURT
OF THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KYU HWAN LEE and HAE SUNG LEE, <br><br>  Plaintiffs, <br><br>  v. <br><br> WAN J. CHAE <br> 6545 Fairland Street <br> Alexandria, VA 22312 <br><br> AMERICAS TITLE GROUP, LLC <br> Serve: Hernan De Los Reyes, RA <br>   6383 Little River Turnpike <br>   Alexandria, VA  22312 <br><br>  Defendants | Civil Action No. _____ <br><br><br> JURY TRIAL DEMANDED |

## COMPLAINT

The Plaintiffs, Kyu Hwan Lee and Hae Sung Lee ("Mr. and Mrs. Lee"), by counsel, hereby complain against the Defendant, Wan J. Chae ("Ms. Chae"), and states as follows:

1. Mr. and Mrs. Lee are former owners of the property at 307 5th Street, NE in the District of Columbia ("the Property").  They currently lease the property which serves as their residence and the location of their business.  They are residents of the District of Columbia.

2. Ms. Chae is a resident of Virginia and a real estate broker, who has represented the Lees.  She owns the Property and is the Lees' landlord.

3. Americas Title Group, LLC is a limited liability company registered in Virginia which provides title and closing services.  Its principals are residents of Virginia, but it has closed transactions occurring in Washington, D.C., including this one.

4. Jurisdiction and venue are proper in this Court, as there is diversity of citizenship

and the amount in question exceeds $75,000.

## Ms. Chae Purchases the Property from Lees

5. In 2011, the Lees owned the Property, from which they operated a retail dry cleaning store.

6. Due to financial difficulties, they were forced to list the Property for sale or face foreclosure under a Deed of Trust. At the time, Ms. Chae was their real estate agent who had listed the property. She was also a personal friend.

7. Ms. Chae suggested and the Lees agreed that she purchase the Property on their behalf, using her credit, with the understanding that she would convey the Property back to them once they had sufficient credit.

8. On July 8, 2011, the Lees entered a contract with Ms. Chae in which she agreed to purchase the Property from them for the face price of "$750,000." A true and accurate copy of the July 8, 2011 Sales Contract is attached as Exhibit A.

9. In actuality, the purchase price was $562,500 which represented the loan ("the Loan") that Chae was able to obtain from the lender John Marshall Bank ("the Lender") for the purchase, via a loan broker named Patrick Moon. Ms. Chae did not pay any of her own funds or provide any other consideration.

10. As stated infra, the purpose of the transaction was to allow the Lees to maintain their business at the Property and eventually purchase it back.

11. On October 20, 2011, the parties closed the transaction. A true and accurate copy of the October 20, 2011 closing statement is attached as Exhibit B.

12. The closing agent was Americas Title Group, which prepared the closing statements attached hereto.

13. The closing statement falsely stated that Ms. Chae had paid a "deposit" of

$170,000.00 which was "retained by seller." It also falsely concealed commissions that were paid to Ms. Chae and the loan broker at closing, based upon the Loan. Indeed, the only "consideration" that the Lees received for selling the Property – which had at least $275,000 in equity based upon the appraisal -- was the payoff of first mortgage to Wachovia, listed at $467,375.00, as well as the payment of certain outstanding taxes.

14. The closing sheet was prepared by Americas Title Group at the direction of Ms. Chae. Mr. and Mrs. Lee were not aware of the inaccuracies that it contained. They only knew that Ms. Chae was using her credit to buy the property and then leasing it back to them.

### Ms. Chae Becomes a Landlord but then Violates Commercial Lease

15. Prior to closing the transaction, the Lees and Ms. Chae entered a "commercial lease" dated September 27, 2011. A true and accurate copy of the "commercial lease" is attached as Exhibit C.

16. In the "commercial lease," Ms. Chae agreed to lease the Property to the Lees for ten years with a ten-year option. The "rent" to Chae would be the monthly mortgage payment arising from the Loan. The Lees would be responsible for all taxes, utilities and insurance. They would have the right to purchase the Property from Ms. Chae at any time in the next ten (10) years, by paying off the balance of the Loan. In other words, they would continue to pay all costs on the Property, as they had done before the sale.

17. As security for the Lees' interest in the Property, Ms. Chae, agreed to record the "commercial lease" in land records and also put Ms. Lee's name on the Deed as an

owner. However, in the aftermath of the sale, she fulfilled neither of those obligations.

18. After purchasing the Property, the parties entered a new "commercial lease" dated November 15, 2011, which made several substantive changes. A true and accurate copy of that Lease is attached as Exhibit D.

19. The second "commercial lease" narrowed the buy-back period to five (5) years for the Lees. It also entitled Ms. Chae to a "real estate broker's commission" of "10%" based upon the true purchase price of $562,500. It continued to require Ms. Chae to add Ms. Lee or her daughter (Millie Coppa) to the title of the Property, so as to protect the Lees' interest in the Property. Again, that never happened.

20. At the time of signing the commercial leases, Mr. and Mrs. Lee were unaware that the closing statement had been falsified. They were also unaware of the commissions already obtained by Ms. Chae at closing.

21. For the next several years, Mr. and Mrs. Lee made the mortgage payments on the Loan and paid all associated costs, including real estate taxes and insurance. In their understanding, they were paying down the mortgage balance with each payment, as outlined in the commercial lease.

**Lees Discover Fraud**

22. In early May 2014, the Lees saw an article in the Korean Business Journal which stated that the loan broker (Patrick Moon) had been indicted by the Federal government for making false statements on commercial loan documents, specifically for purposes of Small Business Administration loans.

23. That revelation caused them to investigate the circumstances of their own 2011 transaction, including the title statements.

24. At that time, they were also shocked to find that Ms. Chae had used the property as security for additional loans, without their permission or even knowledge, including a refinancing that occurred on January 3, 2014 through Union First Market Bank in Virginia. This contingency would have been prevented by putting the Lees on the title.

25. On June 22, 2016, Mr. and Mrs. Lee, via their counsel, formally requested that Chae (i) put the additional name on the title and (ii) transfer over any funds taken out of the Property illegally by Ms. Chae. There was no response. A true and accurate copy of the June 22, 2016 letter is attached as Exhibit E.

26. On September 7, 2016, Mr. and Mrs. Lee, via undersigned counsel, reiterated their demand to put her name on the title, pay off any unapproved liens and enter a contract for repurchase of the Property. A true and accurate copy of the September 7, 2016 letter is attached as Exhibit F.

27. There is a justiceable controversy between the parties. This Court has jurisdiction to resolve issues between the parties.

### Count One – Breach of Contract
### (Chae Only)

28. The plaintiffs incorporate allegations 1-27.

29. The parties entered the "commercial lease" dated September 27, 2011. That agreement was amended on November 15, 2011. In any event, that agreement required that Chae list Ms. Lee or her designee on the title in order to protect the Lees' interest in the Property. It also required her to convey the Property to the Lees if they elected to exercise the repurchase option.

30. Ms. Chae failed to perform her obligations by listing Lee on the title. Moreover,

she has failed to convey the Property to the Lees.

31. As a result, she has caused damages to the Lees including, but not limited to, loss of use of the Property, loss of value in the Property, closing costs and attorney fees.

### Count Two – Declaratory Judgment
### (Chae Only)

32. The plaintiffs incorporate the allegations 1-27.

33. The Lees have a right to purchase the Property, which Ms. Chae is refusing to exercise. This Court has the power and authority to enter an order compelling Ms. Chae to convey the Property, per the parties' agreement.

34. Further it has the equitable authority to void any "commissions" owed to Ms. Chae based upon her failure and refusal to comply in good faith with her contractual obligations under the agreement.

### Count Three – Fraud
### (Chae and Americas Title Group)

35. The plaintiffs incorporate the allegations 1-34.

36. The Lees relied to their detriment upon the statements by Chae and Americas Title Group that were made to them pursuant to the 2011 transaction described herein. Those statements were false statements of material fact and were intended to defraud. The Lees were damaged by those false statements.

37. The Lees did not discover the substance of those false statements until after learning of the criminal conduct of the loan broker in May 2014 (Patrick Moon) and their subsequent investigation of the conduct of both the broker and Ms. Chae. Prior to that date, they were under the impression that the 2011 transaction had been handled professionally and with due regard for legal standards.

WHEREFORE, the Plaintiffs, KYU HWAN LEE AND HAE SUNG LEE, requests the following relief:

1. An order (i) compelling the sale of the Property for an amount representing the balance of the Loan amount, (ii) requiring Ms. Chae to repay the Lees for any additional liens put upon the property, (ii) vacating any commission owed to Ms. Chae based upon her refusal to cooperate with the sale of the Property, and (iv) requiring her to pay all closing costs.

2. An award of compensatory damages in the amount of $300,000.00, with prejudgment interest, and $300,000.00 in punitive damages against all defendants.

3. Their attorney fees and costs.

Respectfully Submitted

By: _____
SUROVELL ISAACS PETERSEN & LEVY PLC
J. Chapman Petersen, Esq., DC Bar No. 448740
Jason F. Zellman, Esq. DC Bar No. 1012952
Counsel for the Plaintiff
Surovell Isaacs Petersen & Levy PLC
4010 University Drive, 2nd floor
Fairfax, VA 22030
Telephone: 703-251-5400
Facsimile: 703-591-9285
jpetersen@siplfirm.com
jzellman@siplfirm.com